**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARCUS RODRIGUEZ, III, and VALERIE CASTANEDA,<br><br>                    Plaintiffs,<br><br>v.<br><br>ORANGE COUNTY, CAMERON MATHIS, DAVID PULTZ, and DOES 1 THROUGH 10,<br><br>                    Defendants. | Case No.:  23-CV-823-W-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND [DOC. 9]** |

Pending before the Court is the County of Orange, Deputy Cameron Mathis, and Sergeant David Pultz's (collectively "Defendants") motion to dismiss portions of Plaintiffs' First Amended Complaint ("FAC" [Doc. 6]) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Marcus Rodriguez, III, and Valerie Castaneda (collectively "Plaintiffs") oppose.

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART**

1

**AND DENIES IN PART** Defendants' motion to dismiss [Doc. 9] **WITH LEAVE TO AMEND**.

I. **BACKGROUND**

This is a civil rights action where Plaintiffs are seeking damages for alleged violence and discriminatory conduct. (*FAC* ¶ 1.) Plaintiffs filed their initial complaint on May 4, 2023, asserting nine causes of action against Defendants County of Orange (the "County"), Sergeant Pultz, and Deputy Mathis. (*See Compl.* [Doc. 1].) On June 26, 2023, Plaintiffs filed the FAC against the same Defendants, asserting the same causes of action. (*See FAC*.)

According to the FAC, on March 28, 2022, Plaintiff Rodriguez was picking up a prescription for his wife, Plaintiff Castaneda, at a Walgreens drive-thru when multiple unmarked vehicles swarmed Rodriguez's car, and several Caucasian men exited the vehicles, yelling and pointing firearms at him. (*FAC* ¶¶ 16, 17.) The officers aggressively approached Rodriguez, yanked him out of his car, and handcuffed him tightly, causing pain to his arms and back. (*Id.* ¶¶ 20–21.) Rodriguez was given no explanation for why he was being detained and tried explaining that he was a retired peace officer and had identification. (*Id.* ¶¶ 20–22.) The officers eventually realized they had arrested the wrong Marcus Rodriguez, and his son was the target of the arrest. (*Id.* ¶ 23.)

The officers told Rodriguez that law enforcement was at his residence and that they would enter the premises unless he called his son and told him to come outside with his hands up. (*FAC* ¶ 24.) Rodriguez called his son and drove home, with the officers following him. (*Id.* ¶¶ 24–25.) The officers then proceeded to enter Plaintiffs' home with no search warrant and demanded that Rodriguez and Castaneda remain in the kitchen while they performed a search. (*Id.* ¶¶ 26–28.) Rodriguez claims Defendants subjected him to physical pain and severe emotional distress as a result of their conduct. (*Id.* ¶ 29) Castaneda claims Defendants subjected her to mental and emotional distress as several

law enforcement officers entered her home without a search warrant. (*Id.* ¶ 30.) Plaintiffs also claim Defendants displayed and acted with racial animus against them. (*Id.* ¶ 33.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). Well-pled allegations in the complaint are assumed to be true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

To survive a motion to dismiss, a complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## III.   DISCUSSION

The FAC contains nine causes of action for: (1) Unreasonable Use of Excessive Force; (2) Unreasonable Search and Seizure; (3) Right to Equal Protection; (4) Municipal

Liability under *Monell*[1]; (5) Battery and Assault; (6) Negligence; (7) Bane Act; (8) Ralph Civil Rights Act; and (9) Intentional Infliction of Emotional Distress. (*See FAC*.) Defendants now move to dismiss the third, fourth, seventh and eighth causes of action for failure to state a claim.

### A. Right to Equal Protection, 42 U.S.C. § 1983

Plaintiffs' third cause of action alleges Defendants abused their authority and engaged in misconduct because of Plaintiffs' race and national origin, violating their right to Equal Protection. (*FAC* ¶¶ 56–64.) Defendants argue Plaintiffs failed to allege facts supporting their contention that Defendants' conduct was racially motivated. (*Mot.* 5:15–17.)

To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). To sufficiently plead an Equal Protection violation, Plaintiffs must plausibly allege that Defendants acted with some intent or purpose to discriminate against Plaintiffs based on their race or national origin. *Id.*

Here, the allegation most pertinent to Plaintiffs' Equal Protection claim reads as follows:

> PLAINTIFFS are informed and believe and thereon allege that DEFENDANTS' use of excessive force, unlawful detention, unlawful arrest, and false imprisonment was due to their being emboldened to commit misconduct to misuse and abusing their authority or power by taking advantage of some weakness or disability or misfortune of the PLAINTIFFS because of PLAINTIFFS' race and national origin, in reckless disregard of PLAINTIFFS' rights, accompanied by ill will or spite, and was executed

---

[1] *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1978)

> with unnecessary harshness or severity warranting punitive damages against
> the individual (non-government entity) DEFENDANTS.

(*FAC* ¶ 60.) This paragraph is devoid of any facts supporting the conclusory allegation that Defendants' conduct was "because of PLAINTIFFS' race and national origin." (*Id.*) For example, there are no allegations that Defendants made racially charged comments while handcuffing Rodriguez or during the search of Plaintiffs' home. As such, the FAC's allegations fail to suggest Defendants intentionally discriminated against Plaintiffs based on their membership in a protected class. *See Howe v. Cnty. of Mendocino*, 2022 WL 3952395, at *2 (9th Cir. Aug. 31, 2022) (finding conclusory allegations of discriminatory intent without facts supporting the allegations insufficient to state an equal protection claim).

Similarly, there are no facts suggesting that the officers acted with a discriminatory purpose. Discriminatory purpose implies that the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). Here, the FAC alleges the officers incorrectly arrested and detained Rodriguez instead of his son. (*FAC* ¶ 23.) Arguably, these facts support the inference that Rodriguez was detained based on his familial association, not because of his membership in a protected class. Hence, the FAC failed to indicate the officers "selected or affirmed a particular course of action at least in part because of . . . its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts*, 442 U.S. at 279 (internal quotation marks omitted).

For these reasons, the Court will grant Defendants' motion to dismiss Plaintiffs' Equal Protection claim with leave to amend.

**B.   Municipal Liability Under *Monell***

The Supreme Court established that municipalities can be sued directly under 42 U.S.C. § 1983 for "monetary, declaratory, or injunctive relief where . . . the action that is

alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To state a *Monell* claim, a plaintiff must plead facts demonstrating: (1) his or her constitutional right was violated; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. *Lockett v. Cty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). Defendants move to dismiss Plaintiffs' *Monell* claim for failure to identify any specific policies or longstanding practices that resulted in the deprivation of Plaintiffs' rights. (*Mot.* 6:20–26.)

### 1.   Express Policy

To establish a *Monell* claim, Plaintiffs must identify one of the County's policies that was the moving force behind the constitutional violation. *See Lockett*, 977 F.3d at 741. Plaintiffs allege the "COUNTY and its officials maintained or permitted one or more of the following policies, customs or practices which displayed deliberate indifference to the constitutional rights of persons such as PLAINTIFFS and were a direct cause of PLAINTIFFS' damages." (*FAC* ¶ 69.) Plaintiffs then purport to list eleven policies, customs, or practices permitted or maintained by the County (*Id.*)

In *Warner v. County of San Diego*, 2011 WL 662993, at *2 (S.D. Cal. Feb. 14, 2011), the complaint alleged San Diego County had "an unlawful policy, custom or habit of: permitting or condoning the unnecessary and unjustified use of force by sheriff's deputies; permitting or condoning acts of unlawful detention, false arrest and unlawful search and seizure; and inadequate hiring, training, supervision and discipline of deputies." *Id.* at *3. The court held the allegations were insufficient to support a *Monell* claim because they amounted to "formulaic recitations of the existence of unlawful policies, customs, or habits" and failed to include specific facts *Id.* at *4.  Similarly, in

*Garcia v. County of Napa*, 2022 WL 110650 (N.D. Cal. Jan. 12, 2022), the district court found allegations that the County of Napa had policies "[t]o use or tolerate the use of unlawful deadly force, of covering up constitutional rights," and for encouraging a "code of silence" failed because they were "too vague and insufficiently detailed to adequately allege the policy at issue. *Id.* at *6 (citing numerous other cases finding similar allegations insufficient.)

Here, it difficult to even discern which of the eleven items listed in paragraph 69 of the FAC purport to be County policies. Many of the items listed refer to failures to train or discipline (i.e., 69.b., c.), while others appear to implicate ratification (i.e., 69.f., g.). Two of the eleven reference the word "policy" and thus presumably represent Plaintiffs' attempt to allege County policies. The first alleges the County has announced "that unjustified uses of excessive force are 'within policy.'" (FAC ¶ 69.) The second alleges the County maintains "a policy of inaction … towards soaring numbers of police excessive force incidents…." (*Id.*) Similar to the allegations in *Warner* and *Garcia*, these allegations are simply too vague to adequately plead a policy or to suggest that any policy was the moving force behind the alleged constitutional violations. Accordingly, the Court finds Plaintiffs have failed to plead a *Monell* claim based on a County policy.

### 2. Unconstitutional Patterns or Practices

The FAC also alleges the County permitted "customs or practices" of unconstitutional conduct. (*FAC* ¶ 69.) An unconstitutional pattern or practice can be inferred from pervasive evidence of "repeated constitutional violations" that are closely related to the alleged practices. *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992).

Again, it is difficult to figure out which of the eleven items listed in paragraph 69 support Plaintiffs' pattern or practice theory. Regardless, the FAC is devoid of any allegations of previous wrongful conduct by the County's officers to support an inference of repeated constitutional violations. For example, the FAC alleges the County condones and encourages officers "in belief that they can violate the rights of persons, such as

PLAINTIFFS, with impunity…." (*FAC* ¶ 69f.) Yet, Plaintiffs fail to identify any other instances where the County's officers violated anyone's constitutional rights, much less the same constitutional rights at issue in this case. For this reason, the Court finds the FAC fails to state a *Monell* claim based on a pattern and practice of unconstitutional conduct. *See Segura v. City of La Mesa*, 2022 WL 17905529, at *6 (S.D. Cal. Dec. 23, 2022) (plaintiff must do more than allege in a conclusory fashion that the county maintains an unwritten policy or custom permitting the types of wrongs plaintiff experienced); *J.K.G. v. County of San Diego*, 2011 WL 5218253, at *9 (S.D. Cal. Nov. 2, 2011) (pattern and practice theory insufficiently pled without facts of other similar constitutional violations).

### 3. Failure to Train

Plaintiffs also base their *Monell* claim on a failure to train. A failure to train or supervise may also give rise to a *Monell* claim, but only if "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact with." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Failure to train may amount to a policy of deliberate indifference if the need to train was obvious and the failure to do so made a violation of constitutional rights likely. *Dougherty*, 654 F.3d at 900 (citing *City of Canton*, 489 U.S. at 390). Moreover, for liability to attach, the "identified deficiency in a city's training program must be closely related to the ultimate injury." *City of Canton*, 489 U.S. at 391.

Plaintiffs' failure to train theory is based on two general claims. Plaintiffs allege the County failed to "retrain" officers previously involved in "misconduct," "shootings" that were "determined in court to be unconstitutional" or "excessive force incidents." (*FAC* ¶¶ 69i, j, k.) The problem with these allegations is they are not "closely related to the ultimate injury" Plaintiffs suffered. According to the FAC, Plaintiffs' constitutional injuries arose from the manner in which the officers removed Rodriguez from his car and handcuffed him, and the search of Plaintiffs' home. Yet, the most of the failure to train

allegations deal with the failure to "retrain" officer previously involved in unconstitutional conduct, such as "shootings." There are no allegations any of the officer defendants were previously involved in misconduct, and there are no allegations that the officers fired their weapons. Thus, the allegations are not closely related to Plaintiffs' injuries.

The FAC also alleges the County failed to adequately train and supervise officers "with respect to constitutional limits on the use of excessive force." (*FAC* ¶ 69b.) This allegation is too vague, implicating a large number of circumstances including the use of deadly force, tasers, batons, etc. and thus cannot be said to be "closely related" to Plaintiffs' injury. For these reasons, the Court finds the FAC fails to state a *Monell* claim based on a failure to train.

### 4. Ratification

Plaintiffs additionally claim "[r]atification by the highest levels of authority of the specific unconstitutional acts alleged in the Complaint." (*FAC* ¶ 69g.) *Monell* liability can be demonstrated through decisions of a final policy-making official who commits the violation himself or ratifies the unlawful act of a delegate. *Lytle v. Carl*, 382 F.3d 978, 986 (9th Cir. 2004).

Here, the FAC is devoid of facts indicating how Defendants ratified the alleged constitutional violations. There are simply no allegations remotely suggesting knowledge or approval of the alleged constitutional violations by any policy-making official. *See Lytle*, 382 F.3d at 987 (explaining to support ratification, a policymaker must have knowledge of the constitutional violation and actually approve of it). Accordingly, the Court finds the FAC fails to allege *Monell* liability based on ratification.

### C. California Civil Code § 52.1, the Tom Bane Civil Rights Act

Plaintiffs assert Defendants intentionally interfered with their exercise and enjoyment of rights under federal and state law by acting with reckless disregard for

Plaintiffs' rights, violating California Civil Code § 52.1, known as the Bane Act. (*FAC* ¶ 87–91.) "The Bane Act civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation or coercion." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation and internal quotation marks omitted). Although a plaintiff must prove an intent to violate a person's constitutional rights, it is not necessary for the defendant to have been "thinking in constitutional or *legal* terms at the time of the incidents." *Id.* at 1045 (emphasis in original). "[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Id.*

Defendants raise several arguments related to Plaintiffs' Bane Act claim. First, they argue they "are left guessing what actions allegedly violated the Bane Act and the manner in which those actions prevented Plaintiffs from exercising their rights or forced Plaintiffs to do something they were not legally required to do." (*Mot.* 7:11–16.) The Court disagrees with respect to Rodriguez, who alleges Defendants violated his Fourth Amendment right by using excessive force. (*See FAC* ¶ 35.) Defendants do not challenge the excessive force claim, which at this stage in the litigation is sufficient to support the Bane Act claim. *See Reese*, 888 F.3d at 1043 (holding the use of excessive force can be enough to satisfy the threat, intimidation, or coercion element of the Bane Act).

With regard to Castaneda, however, the Court finds she failed to allege a Bane Act violation. The only constitutional right allegedly violated with respect to Castaneda relates to the search of her home and her detention. According to the FAC, this violation was carried out by Defendants "demand[ing] that [Plaintiffs] stay in the kitchen while officers performed an illegal search that lasted hours." (*FAC* ¶ 27.) Beyond demanding that Plaintiffs remain in the kitchen, there are no allegations the officers pointed their weapons at Plaintiffs or used any force or means of intimidation during the search/detention. Thus, these allegations are insufficient to show her constitutional rights were interfered with by the use of threats, intimidation, or force.

Second, Defendants argue a plaintiff bringing a claim under the Bane Act must allege something "beyond the coercion inherent in his momentary detention." (*Mot.* 7:25–26.) The standard proposed by Defendants is incorrect. In *Reese*, 888 F.3d at 1043, the Ninth Circuit held the Bane Act does not require the element of threat, intimidation, or coercion to be independent from the alleged constitutional violation.

Third, Defendants argue Plaintiffs have not alleged sufficient facts to infer a specific intent to violate their rights. (*Mot.* 8:12–25.) But the Ninth Circuit has held that for the specific intent element, it is not necessary for the defendants to have been "thinking in constitutional *or legal terms* at the time of the incidents," but rather that "a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese*, 888 F.3d at 1045 (emphasis in original) (quoting *United States v. Reese*, 3 F.3d 870, 885 (9th Cir. 1993)). At this stage in the litigation, Rodriguez's allegations that the officers subjected him to excessive force, bodily restraint, and violence when they detained him are enough to support this element.

Based on the foregoing, the Court finds the FAC sufficiently alleges a Bane Act claim with respect to Rodriguez, but not Castaneda.

**D.   California Civil Code § 51.7, Ralph Civil Rights Act**

Plaintiffs' eighth cause of action asserts Defendants violated California Civil Code§ 51.7, also known as the Ralph Civil Rights Act, by committing acts of racial violence against Plaintiffs. (*FAC* ¶¶ 92–98.) Defendants move to dismiss this claim, arguing Plaintiffs do not allege any facts from which the Court could infer that Defendants' actions were racially motivated. (*Mot.* 6:6–7.) The Court agrees.

To sufficiently plead a Ralph Act claim, a plaintiff must allege that (1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. *Knapps v.*

*City of Oakland*, 647 F. Supp. 2d 1129, 1167 (N.D. Cal. 2009) (citing *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880–81 (2007)).

>Here, the allegation most pertinent to Plaintiffs' Ralph Act claim alleges:
>
>Upon information and belief, a substantial and motivating reason for the DEFENDANTS' use of unreasonable and excessive force was due to their being emboldened to commit misconduct to misuse and abuse their authority or power by taking advantage of some weakness or disability or misfortune of PLAINTIFFS because of PLAINTIFFS' race in reckless disregard of PLAINTIFFS' rights, accompanied by ill will or spite, and was executed with unnecessary harshness or severity warranting punitive damages against the individual (non-governmental entity) DEFENDANTS.

(*FAC* ¶ 95.) The Court finds the second element of the Ralph Act insufficiently plead. As explained with respect to the Equal Protection Clause claim, this paragraph is devoid of facts supporting the conclusory assertion that Defendants were motivated by their perception of Plaintiffs' race.

In *Young v. Cnty. of San Diego*, 2021 WL 1087102, at *7 (S.D. Cal. Mar. 22, 2021), the plaintiff, an African American man, alleged officers treated him differently than his non-African American wife. *Young*, 2021 WL 1087102, at *7. Specifically, he alleged the officers refused to let him take his son home because he did not have his photo identification. *Id.* However, the officers allowed his wife to do so without checking her photo identification. *Id.* Based on these factual allegations, the court found they were sufficient to satisfy the second element of the Ralph Act claim. *Id.*

In *Piccini v. City of San Diego*, 2022 WL 2788753, at *5 (S.D. Cal. July 15, 2022), plaintiffs alleged that while returning to their car from a Black Lives Matter ("BLM") protest, an officer saw their protest sign and immediately reported their appearance, sign, actions, and affiliation with BLM to other officers. *Piccini*, 2022 WL 2788753, at *5. Moments later, one of the plaintiffs was arrested and thrown into an unmarked van, while the other was forced to their knees and threatened that if they followed, they would be shot. *Id.* The court held these facts sufficiently pleaded that the officers were motivated by their perception of plaintiffs' race. *Id.*

In both *Young* and *Piccini*, the facts suggested that the officers' conduct may have been motivated by plaintiffs' race. Here, in contrast, Plaintiffs' conclusory claims that the use of excessive force was the result of Plaintiffs' race are not supported by any facts. For these reasons, the Court will grant Defendants' motion to dismiss the Ralph Act claim with leave to amend.

### IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion [Doc. No. 9] and **ORDERS** as follows:

- Defendants' motion to dismiss the third cause of action is **GRANTED WITH LEAVE TO AMEND**.
- Defendants' motion to dismiss the fourth cause of action is **GRANTED WITH LEAVE TO AMEND**.
- Defendants' motion to dismiss the seventh cause of action is **DENIED** as to Rodriguez and **GRANTED WITH LEAVE TO AMEND** as to Castaneda.
- Defendants' motion to dismiss the eighth cause of action is **GRANTED WITH LEAVE TO AMEND**.

The Second Amended Complaint is due on or before **October 25, 2023**.

**IT IS SO ORDERED**.

Dated: October 4, 2023

Hon. Thomas J. Whelan
United States District Judge